IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL No. 1:19CR00199-001 |
| v. | ) | |
| | ) | Sentencing Date: February 21, 2020 |
| Budder Y. Khan | ) | |
| Defendant | ) | The Honorable T.S. Ellis, III |
| _____ | ) | |

**POSITION OF THE DEFENSE**
**WITH RESPECT TO SENTENCING FACTORS**

## I. INTRODUCTION

In accordance with this Court's policy regarding guideline sentencing and §6A1.2 of the

United States Sentencing Guidelines and Policy Statements, Counsel for the Defendant hereby

represents that he and his client have reviewed the Probation Officer's report and that there is one

objection to the calculation of sentencing factors related to the Career Offender Enhancement. The

Probation Officer, applying the Career Enhancement penalties of §4B1.1(b)(3), suggests that the

Court find the sentencing factors to be properly assessed with an Offense Level Total of 29 and a

Criminal History Category VI, resulting in a Guideline Range of 151-188 months.

However, In light of the United States Supreme Court's holding in *Kimbrough v. United*

*States, 552 U.S. 85 (2007);* we respectfully argue that the Sentencing Commission has neither

empirical evidence nor national experience to justify the enhancement, and that the Court should

thus find the sentencing factors to be correctly calculated with an Offense Level Total of 25 and a

Criminal History Category VI, resulting in a Guideline Range of 110-137 months.

The Defense further argues, however, that the 18 U.S.C. §3553(a) factors suggest that the

Court should consider a much lower sentence; it is our position that the nature and circumstances

of Mr. Khan's criminal acts, his own history and characteristics, the kinds of sentences available to the Court and the sentence already meted out for his co-defendant make a 110-137 month sentence excessive. This Court certainly has discretion to order a variance if the Court does not believe that the Sentencing Guidelines provide for a fair sentence. *See, e.g., Spears v. United States, 555 U.S. 261 (2009); Gall v. United States, 552 U.S. 38 (2007); Pepper v. United States 131 S.Ct. 1229 (2011); Williams v. New York 337 U.S. 241 (1949)*, *United States v. Pauley, 511 F.3d 468 (4th Cir. 2007)*.

## II.  THE CAREER OFFENDER ENHANCEMENT

As the Probation Officer noted in his report, Mr. Khan was at least 18 years old at the time of the instant offense, the instant offense is a felony that is a crime of violence, and he has multiple prior felony convictions for both crimes of violence and controlled substance offenses. *See, e.g., PSR ¶¶ 34-40, 42-47, 52, 56-82.*  Ordinarily, Mr. Khan's relevant conduct and criminal history would result in a Guideline Range of 110-137 months, itself a significant portion of any person's life.

Under USSC §4B1.1(b)(3), and unfortunately for Mr. Khan, the Sentencing Guidelines Commission has a special computation for what they call "Career Offenders," raising both the offense level and criminal history category to ensure a sentence of 151-188 months.

The question for the Court to consider is whether this particular guideline actually helps distinguish one offender from another using any sort of factual basis or judicial experience, as required by 18 U.S.C. §3553(a). It clearly does not. The Sentencing Guidelines Commission tells us in the Application Notes to §4B1.1 that this particular guideline was written after Congress "mandate[d] that certain 'career' offenders receive a sentence 'at or above the maximum term

authorized.'" According to the Commission's own words, this particular enhancement simply escalates the suggested punishment to ensure a lengthy sentence rather than differentiate one offender from another based on the nature and circumstances of the offense or the history and characteristics of the defendant.

As the Supreme Court noted in *Kimbrough v. United States,* 552 U.S. at 109, the Sentencing Commission has a distinctive, institutional role of basing its determinations on empirical data and national experience; by imposing higher offense levels and criminal history categories without regard to the particular facts of the case at hand it is difficult to imagine how this enhancement "reflect[s] a rough approximation of sentences that might achieve [18 U.S.C.] §3553(a)'s objectives." In cases like this one, a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect." *See Kimbrough,* 552 U.S. at 109, *Spears v. United States,* 555 U.S. 261 at 264 (2009), *Rita v. United States,* 551 U.S. 338 at 348 (2007)*.

We respectfully ask that the Court ignore the §4B1.1 enhancement because of this failure to fairly differentiate Mr. Khan from other offenders; Mr. Khan simply should not be given a longer sentence than the relevant conduct of the instant offense and his actual record would support. Without the enhancement, Mr. Khan's Offense Level Total is 25 and his Criminal History Category is VI, resulting in a Guideline Range of 110-137 months.

## III. EXTRAODINARY SENTENCES IN ARLINGTON AND ALEXANDRIA, AND THEIR TIMING,  CREATE THE RISK OF ARBITRARILY EXCESSIVE PUNISHMENT IN THIS COURT

Mr. Khan's case is one where the application of the sentencing factors is extraordinarily complex. While he is in fact guilty of two separate Hobbs Act Robberies, and is deserving of

punishment, the Sentencing Guidelines do not adequately account for all of the aims of 18 U.S.C. §3553(a).

The nature and circumstances of Mr. Khan's offense are clear – Mr. Khan robbed two local pawn shops to feed his addiction, endangering shopkeepers, customers, co-conspirators and himself along the way. It is Mr. Khan's history and characteristics that make this case difficult – he was born in Arlington, Virginia, has lived here almost all of his life, and though he has managed to obtain a GED, work in construction, retail sales and in food service, he has also been convicted of several misdemeanor and felony charges involving theft and drug use, including two bank robberies. Several of these crimes, including the bank robberies, happened after the Hobbs Act robberies charged in this case.

Those subsequent crimes, described in paragraphs 74, 77, 79, 80 (controlled substances charges and related probation violations), 81 and 82 (bank robberies) of the Pre-Sentence Report, pose a difficult problem for this Court; though Mr. Khan was not prosecuted in this Court before 2019, the offenses were well known to and readily provable by federal law enforcement  long before. According to paragraphs 14 and 15 of the Pre-Sentence Report, items from the robbery charged in Count 2, many with the victim store's tags still affixed, were recovered by law enforcement pursuant to a search warrant executed in October of 2014, and detectives heard Ms. Phothong admit to that robbery on a recorded jail phone call with Mr. Khan a week later. According to paragraph 16 of the Pre-Sentence Report, law enforcement knew Mr. Khan committed the robbery charged in Count 4 in September of 2015 because they recovered his DNA at the scene, matched it with a sample on file in Virginia's DNA Data Bank and executed a search warrant to obtain another sample. In both of these cases, no further action was taken to prosecute Mr. Khan until 2019. Meanwhile, Mr. Khan was being prosecuted in two different Virginia

jurisdictions for crimes that occurred within the same basic course of conduct as the instant

offenses. He received a total sentence far in excess of what he would have received had the state

offenses occurred in one jurisdiction instead of two, or been consolidated in one sentencing event

– a mechanism which is allowed and easy to orchestrate in Virginia state courts.

Neither the Defendant nor his Counsel places any blame on law enforcement or the

government for intentional delay, as the delay seems to have been the result of case assignment or

priority procedures having nothing to do with Mr. Khan's case, nor do we argue that the delay

meets the four-part balancing test for dismissal from *Barker v. Wingo, infra*.  Mr. Khan accepts

and even embraces the fact that all of the  crimes he has been convicted of are his responsibility.

However, Counsel believes it is important to discuss the prejudicial effect of (1) Mr. Khan facing

two state court sentencing events instead of one; and (2) the instant case following four years after

those sentencing events and encompassing crimes that occurred in between the two. In short, Mr.

Khan will be sentenced in three jurisdictions for a crime spree which would have resulted in

substantially less exposure had his crimes been prosecuted in one jurisdiction. (For example, if he

had been prosecuted in federal court for all of the robberies when they became known, his

guidelines would have been lower in that one sentencing event than the time he is already serving

for Virginia – even if this court imposed no additional tome to serve in this case.) Instead, he is

serving a state sentence with a 2034 release date, and now faces high sentencing guidelines in this

case.

Courts have long recognized that the detrimental effects of prosecutorial delays go to more

than a defendant's right to a speedy trial. In Justice Powell's unanimous decision in *Barker v.*

*Wingo*, 407 U.S. 514 (1972), the Supreme Court specifically recognized that a delay in

prosecuting a defendant could result in him committing more crimes, *Id,* at 519 and a delay in

punishing him "makes the rehabilitation of the individual offender much more difficult." *Id,* at 520. Furthermore, the court held that though a defendant *could* do something to accelerate the process, the duty to provide a speedy trial belongs to the government. *Id,* at 527, and that a delay resulting from the government's negligence or lack of resources, like this one, "should be weighed less heavily [than bad faith] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government." *Id,* at 541. In *Doggett v. United States,* 505 U.S. 647 (1992), a case that began in this courthouse, the Supreme Court held that this kind of government negligence prejudices a defendant in "unidentifiable ways." *Id,* at 647, and that the government probably cannot affirmatively prove that the Defendant has not been prejudiced by a delay of this length. *Id,* at 658.

Without shirking Mr. Khan's responsibility for both his addiction and his criminal conduct, we respectfully argue that the dangers the Supreme Court recognized in *Barker* and *Doggett* are indeed something to consider in Mr. Khan's case. The government's failure to prosecute Mr. Khan in 2014 or 2015 – when they knew he was guilty – left him on the street to commit more crimes. The government's failure to prosecute Mr. Khan in 2016 – when he was apprehended for two bank robberies here in the Eastern District – resulted in him receiving more time from the local courts than the Federal Sentencing Guidelines would suggest for the instant case and both bank robberies *combined.* And the guideline calculation for the instant case, including the Career Offender enhancement the Probation Officer and the government have asked for, rests on those bank robberies.

Furthermore, the delay in punishing Mr. Khan left him without any meaningful support for his addiction to heroin and other drugs, including the rehabilitative services available within the Bureau of Prisons and the federal probation system, support that might have stopped him from

robbing banks to feed his heroin addiction, and they leave this Court unable to offer any such services until at least 2034.

And finally, while that delay is certainly not the result of bad faith, Mr. Khan was likely prejudiced by the erosion of his memory in the ensuing years. For example, he is unable to remember enough information to offer substantial assistance to the government and earn a reduction pursuant to §5K or Rule 35, and the statute of limitations renders any such assistance of limited value in any event.

A sentence even near the guideline range would be excessive given the existing 19 year aggregate sentence Mr. Khan is already serving, and we ask that the Court consider a different approach.

### IV. FACTORS UNDER 18 USC 3553 (a)

In assessing how much time is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, while affording adequate deterrence and protecting the public, we respectfully ask that the Court consider sentencing Mr. Khan to time served, or imposing a sentence that is concurrent to the existing Virginia sentence he is already serving. It is our contention that this is itself more time than necessary to meet the needs mentioned above, and that adding an additional 110 or 151 months in the Bureau of Prisons would be wildly excessive.

### CIRCUMSTANCES OF THE OFFENSE

These offenses were serious violent crimes. They occurred at a time when Mr. Khan was using drugs constantly – a habit that started in his teenage years and got worse and worse until his incarceration in state court for the similar charges discussed above. Mr. Khan committed the all of the offenses between the ages of twenty-four and twenty-six. Without another minute of prison

time imposed by this Court he will be serving time for his state charges until he is just short of forty-three years old.

**HISTORY AND CHARACTERISTICS OF MR. KHAN**

A forensic psychological evaluation of Mr. Khan prepared by Anita Boss (Attachment A to Mr. Khan's Second Motion to Continue – under seal) provides extensive background information about Mr. Khan and his family, as well as his mental health and substance abuse struggles. As described by Mr. Khan to Dr. Boss, his family was always very close.. Mr. Khan's parents emigrated from Pakistan before he was born, and raised their five children in Arlington. (See Attachment A, Photograph of Khan Washington, D.C.) Growing up, Budder was the closest with his father, who ran a sales kiosk at the Ballston Metro station in Arlington. As a child, Budder regularly rose early on weekends to work all day with his father at the kiosk. The entire family agrees that the passing of sudden and unexpected passing of Budder's father at only fifty-one triggered a downward spiral in Budder from which he is still attempting to recover. It was at that time that Budder began the use of hard drugs like cocaine, and eventually, heroin. As an adult outside of jail, cocaine and later opioid addiction have defined his life and led to the violent theft offenses which are the subject of this and his previous cases discussed above. As Dr. Boss' report makes plain, Budder's extreme addiction – characterized by daily hard drug use, notable physical damage, weight loss, a complete lack of meaningful employment,  and a life threatening overdose - began unusually early in life and never stopped.

Notably, Mr. Khan provided Dr. Boss with a candid and incriminating account of his struggles with addiction and the crimes it spawned. He is desperate for drug treatment, and, for a long time, now, been in a mental place to come clean with himself and others about the harm he has caused to his victims, the sadness he has caused his family, and how his choices have

destroyed his young life. As is commonly known, drugs are readily available in the Virginia prison system, and Budder has been unable to resist drug use on occasions in that setting. There is simply no substance abuse treatment available to him there. He wishes he could serve his state time in the federal system where programs may be available to help him prepare for a healthy life upon his release.

While Mr. Khan has placed himself in this predicament, this Court has the power to select a sentence which would provide him both hope and help. A short federal sentence to follow upon his lengthy state sentence  - just long enough to enter and complete the Residential Drug Abuse Program – would satisfy all sentencing objectives and have real potential to achieve long lasting good.   He is an ideal candidate for job training, life skills and college courses and the RDAP program.

**UNWARRANTED DISPARITY**

Counsel also notes that this would avoid an unwarranted sentencing disparity with his co-defendant, Ms. Phothong. Though Ms. Phothong does not have the extensive criminal record Mr. Khan has, and she apparently began cooperating with the government years ago, she was sentenced to probation, with a six-month term of community confinement. While there should be a significant difference between their sentences – Mr. Khan was an active participant in both robberies rather while Ms. Phothong merely assisted him with other tasks like driving the getaway car and disposing of the stolen goods, but even with a sentence of time served or concurrent time he will be in prison until 2034, that this disparity is already far more than what is warranted to punish him for his conduct or reward her for her assistance.

Similarly, as discussed above, addition of a long federal prison to his two state sentences, as discussed above, arbitrarily over punishes him compared to a similarly situated defendant who committed the same crimes and was punished by one, as opposed to three – jurisdictions.

**In Conclusion**

Mr. Khan, while responsible for both his addiction and his actions. He deserves significant punishment, but we respectfully ask that the Court consider the unusual posture in which it finds this case.  A fair sentence is one which adds only a rehabilitative component.

Respectfully Submitted,

_____/S/_____
Gregory T. Hunter
Virginia State Bar Number 45489
Attorney for the Defendant
2055 North 15th Street
Suite 302
Arlington, Virginia 22201
(703) 527-0808 telephone
(703) 527-0810 facsimile
greghunter@mail.com

_____/s/_____
Christopher Leibig, Esq.
VA Bar No.: 40594
*Counsel for the Defendant,*
The Law Office of Christopher Leibig, LLC.
114 N. Alfred Street
Alexandria, VA 22314
(703) 683-4310
(703) 684-9700 Fax
Chris@Chrisleibiglaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of February, 2020, an exact copy of the foregoing Position of the Defense with Respect to Sentencing Factors was filed with the Clerk of the Court using the CM/ECF system, causing a Notice of Electronic Filing to be served upon:

Alexander Blanchard, Esquire
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700 telephone
(703) 299-3980 facsimile
Alexander.Blanchard@usdoj.gov


Copies of this document have been forwarded to the following non-filing users:
By electronic mail:
      Kenneth G. Orsino
      United States Probation Officer
      United States Probation Office for the Eastern District of Virginia
      8809 Sudley Road
      Suite 200
      Manassas, Virginia 20110
      (703) 366-2109 telephone
      Kenneth_Orsino@vaep.uscourts.gov

By personal service:
      Budder Y. Khan
      Defendant
      Alexandria Adult Detention Center

                    _____/S/_____
                    Gregory T. Hunter
                    Virginia State Bar Number 45489
                    Attorney for the Defendant
                    2055 North 15th Street
                    Suite 302
                    Arlington, Virginia 22201
                    (703) 527-0808 telephone
                    (703) 527-0810 facsimile
                    greghunter@mail.com